United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILDER JAIME CHAVEZ ESCOBAR,<br>Petitioner,<br>v.<br>SERGIO ALBARRAN, et al.,<br>Respondents. | Case No. 26-cv-08659-CRB<br><br>**ORDER GRANTING TEMPORARY RESTRAINING ORDER** |

The Court GRANTS Petitioner Wilder Jaime Chavez Escobar's ex parte application for a TRO (dkt. 4) for the following reasons.

## I. BACKGROUND

Petitioner is a 40-year-old citizen of Peru being held in ICE custody. Pet. (dkt. 1) ¶¶ 1, 15; App. for TRO at 3–4. Respondents are Sergio Albarran, Field Office Director of the San Francisco ICE office, David J. Venturella, Acting Director of ICE, Markwayne Mullin, Secretary of DHS, and Todd Blanche, Attorney General of the United States, acting in their official capacities. Pet. ¶¶ 17–20.

Petitioner arrived in the United States on December 2, 2022, was detained by federal agents for one day, and then released on his own recognizance. Id. ¶ 1. He is in removal proceedings under 8 U.S.C. § 1229a and is not subject to mandatory detention under 8 U.S.C. § 1226(c). Id. ¶ 41. He filed an asylum application on November 28, 2023. Id. ¶ 1. Since his release in 2022, Petitioner has lived in Oakland; he has attended multiple required check-ins at the San Francisco ICE office, and all immigration court hearings. Id. ¶¶ 1, 36. He has informed ICE of address changes and other changed

United States District Court
Northern District of California

circumstances. Id. ¶ 39. Petitioner obtained a work authorization and works in construction, sending money to Peru to help provide for his three children, ages 4, 16, and 17. Id. ¶¶ 36, 15.

Petitioner has a single arrest from November 22, 2025 in Oakland, California. Id. ¶ 37. He was initially charged with a DUI, but his blood alcohol level was so low that he was ultimately convicted only of a "wet reckless." Id. He received a suspended sentence and is complying with all of the requirements imposed. Id.

On August 19, 2026, immediately after entering the building for his regularly scheduled ICE check-in at the San Francisco ICE office, uniformed DHS agents arrested Petitioner without identifying themselves or their agency, without informing Petitioner of why he was being arrested, and without serving Petitioner with a warrant. Id. ¶ 38. Once Petitioner arrived at the San Francisco ICE office, one of the arresting officers informed him that they had a warrant for his arrest. Id.

Petitioner filed a habeas petition on August 19, 2026, see Pet., and an application for a TRO on August 20, 2026, see App. for TRO.

## II. LEGAL STANDARD

A party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied." Friends of the Wild Swan v. Weber, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." Nken v. Holder, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy

that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" E. Bay Sanctuary Covenant v. Trump, 932 F.3d 742, 779 (9th Cir. 2018) (quoting Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 439 (1974)).

## III. DISCUSSION

Petitioner has satisfied the requirements for injunctive relief.

### A. Serious Questions Going to the Merits

On this record, the Court finds that Petitioner has raised at least a serious question that he is a class member in Garro Pinchi v. Noem, 813 F. Supp. 3d 973, 1010 (N.D. Cal. 2025), where Judge Pitts certified a class consisting of "all noncitizens in the jurisdiction of ICE's San Francisco field office who (1) entered or will enter the United States without inspection; (2) have been or will be charged with inadmissibility under 8 U.S.C. § 1182 and have been or will be released from DHS custody; and who (3) are in removal proceedings under 8 U.S.C. § 1229a . . . ; and (4) are not subject to detention under 8 U.S.C. § 1226(c)." Petitioner is in the jurisdiction of the San Francisco ICE field office; (1) entered the United States without inspection; (2) has been charged with inadmissibility under 8 U.S.C. § 1182 and was released from DHS custody; (3) is in removal proceedings under 8 U.S.C. § 1229a; and (4) is not subject to detention under 8 U.S.C. § 1226(a).

The Court also finds that Petitioner has raised at least a serious question that his re-detention on August 19 was in violation of the injunction issued in Garro Pinchi. In that case, Judge Pitts noted that "DHS for decades limited the re-detention of noncitizens released pursuant to its discretionary authority under § 1226(a), revoking a noncitizen's bond or parole under § 1226(b) only if it determined that the noncitizen's individual circumstances had materially changed." Id. at 995. He observed that that practice changed in May of 2025, when "DHS officers began re-arresting and re-detaining noncitizens whom DHS had previously released pursuant to § 1226(a) without first making any

United States District Court
Northern District of California

individualized determination of changed circumstances." Id. at 995–96. And he held that that new "re-detention policy" is likely arbitrary and capricious, in violation of the APA. Id. at 1027. Judge Pitts therefore stayed the re-detention policy pending final resolution of the APA claim. Id. at 1039–40. Petitioner appears to have been re-detained without DHS first making any individualized determination that there are changed circumstances as to Petitioner's dangerousness or flight risk.[1]

Petitioner has similarly raised a serious question that his re-detention without a pre-deprivation hearing violates the Due Process Clause of the Fifth Amendment. See Matthews v. Eldridge, 424 U.S. 319, 335 (1976); Zadvydas v. Davis, 533 U.S. 678, 690–93 (2001); Zinermon v. Burch, 494 U.S. 113, 127 (1990).

**B. Other Winter Factors**

Petitioner has also demonstrated a likelihood of immediate, irreparable injury in the absence of temporary relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)). The Ninth Circuit has recognized "the irreparable harm imposed on anyone subject to immigration detention." Id. at 995. In Petitioner's case, that harm will fall not only on him but on the family he supports. See Pet. ¶ 40 ("Petitioner is unable to earn money to provide for himself and his family, severely harming his minor children and potentially leading to the interruption of his eldest child's education. Without being able to work and earn money, Petitioner will be unable to satisfy important responsibilities including paying for his rent, and faces the risk of losing his job in construction.").

In light of Petitioner's potentially unlawful detention and deprivation of his liberty, the balance of hardships tips sharply in his favor, see Hernandez, 872 F.3d at 996, which, together with the serious questions on the merits and even absent irreparable harm,

[1] Moreover, the Court agrees that on the present record, "there is no credible argument that Petitioner, who has a single arrest and conviction, who complied with his ICE check-ins and immigration court appearances, and who was detained while appearing for his ICE check-in, is a flight risk or danger." See App. for TRO at 12.

supports the granting of a TRO. See Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

The balance of the equities and public interest, which merge in this case, also favor the granting of a TRO. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." Jorge M. F. v. Wilkinson, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); see Melendres, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district and others have concluded under similar circumstances, "the potential harm to [Petitioner] is significant, while the potential harm to the government is minimal." Pablo Sequen v. Kaiser, No. 25-cv-06487-PCP, 2025 WL 2203419, at *3 (N.D. Cal. Aug. 1, 2025). At most, the government faces a short delay in detaining Petitioner if it ultimately demonstrates that his detention is appropriate. The government is also not "harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983).

Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." Hernandez, 872 F.3d at 996) (quoting Lopez v. Heckler, 713 F.2d 1432, 1437 (9th Cir. 1983)).

## IV. CONCLUSION

A TRO immediately releasing Petitioner is appropriate to return him to the status quo. E. Bay Sanctuary Covenant, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." Doe v. Noem, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d

United States District Court
Northern District of California

1199, 1210 (9th Cir. 2000)). Consequently, **IT IS HEREBY ORDERED** that Petitioner's application for a TRO is **GRANTED** on the ensuing terms to preserve the status quo while the merits of the habeas petition are resolved:

(1) Respondents are directed to immediately release Petitioner from custody. Petitioner must be released no later than 10:00 A.M. on August 21, 2026, and Respondents will file a status report by 5:00 P.M. on August 21, 2026 confirming that Petitioner has been released.

(2) Respondents are enjoined from detaining Petitioner without a pre-deprivation bond hearing before a neutral arbiter where Respondents must prove, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community such that Petitioner's physical custody is required.

(3) Respondents are directed to return to Petitioner all property confiscated from Petitioner during his arrest, processing, and/or detention, including but not limited to any personal identification, employment authorization document, medical insurance card, money, legal documents, and other personal effects.

(4) Respondents are directed to show cause in writing by August 28, 2026, why a preliminary injunction should not issue. Petitioner may file a response by September 1, 2026. If needed, a hearing will be set by further order.

There is no realistic likelihood of harm to Respondents from enjoining their conduct, and so Petitioner need not give security under Rule 65(c) of the Federal Rules of Civil Procedure. See Jorgensen v. Cassiday, 320 F.3d 906, 919–20 (9th Cir. 2003); Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999).

This order will expire in 14 days unless extended by further order.

**IT IS SO ORDERED.**

Dated: August 20, 2026

CHARLES R. BREYER
United States District Judge