United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILDER JAIME CHAVEZ ESCOBAR,<br>Petitioner,<br>v.<br>SERGIO ALBERRAN, et al.,<br>Respondents. | Case No. 26-cv-08659-CRB<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION** |

This Court issued a TRO in August, holding that Petitioner Wilder Jaime Chavez Escobar had raised at least a serious question that his re-detention without a pre-deprivation hearing at a routine ICE check-in violated the preliminary injunction issued in Garro Pinchi v. Noem, 813 F. Supp. 3d 973 (N.D. Cal. 2025), and the Due Process Clause of the Fifth Amendment. See Order Granting TRO (dkt. 6) at 3–4. The Court further held that in light of Petitioner's "potentially unlawful detention and deprivation of his liberty, the balance of hardships tips sharply in his favor." Id. at 4 (citing Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017)). Accordingly, the Court ordered Respondents to immediately release Petitioner, and enjoined them from re-detaining him without a pre-detention hearing before a neutral arbiter. Id. at 6. This Court now analyzes whether a preliminary injunction should issue.

## I. BACKGROUND

The most significant facts are as follows.

Petitioner is a citizen of Peru[1] who arrived in the United States on December 2,

[1] Respondents incorrectly state that Petitioner is a "native and citizen of Guatemala," but

2022, was detained by federal agents for one day, and then released on his own recognizance. Pet. (dkt. 1) ¶ 1. He is in removal proceedings under 8 U.S.C. § 1229a and is not subject to mandatory detention. Id. ¶ 41. He filed an asylum application on November 28, 2023. Id. ¶ 1. Since his release in 2022, Petitioner has lived in Oakland; he has attended every required check-in and immigration court hearing. Id. ¶¶ 1, 36, 39. He has informed ICE of address changes and other changed circumstances. Id. ¶ 39. Petitioner obtained a work authorization and works in construction, sending money to Peru to help provide for his three children, ages 4, 16, and 17. Id. ¶¶ 36, 15.

Petitioner has a single arrest from November 22, 2025 in Oakland, California. Id. ¶ 37. He was initially charged with a DUI, but his blood alcohol level was so low that he was ultimately convicted only of a "wet reckless," a misdemeanor. Id. He received a suspended sentence and is complying with all of the requirements imposed. Id.

Nearly nine months after his arrest, on August 19, 2026, after entering the building for his regularly scheduled ICE check-in at the San Francisco ICE office, uniformed DHS agents arrested Petitioner. Id. ¶ 38. They did not tell Petitioner why he was being arrested, and did not serve him with a warrant. Id. Once Petitioner was in DHS custody, one of the arresting officers informed him that they had a warrant for his arrest. Id.

Petitioner filed a habeas petition on August 19, 2026, see Pet., and an application for a TRO on August 20, 2026, see App. for TRO. This Court's order granting that TRO directed Respondents to show cause why a preliminary injunction should not issue. Order Granting TRO at 6. Respondents have now done so, see Resp., and Petitioner has replied, see Reply (dkt. 9).

---

they cite to Petitioner's declaration, which states that he is a citizen of Peru. See Resp. (dkt. 8) at 1 (citing Pet. Decl. (dkt. 5-1) at 2); Pet. Decl. at 2 ("I was born in Peru"); see also Starrett Decl. Ex. 1 (dkt. 8-2) (Record of Deportable/Inadmissible Alien) (listing "Peru" for "City, Province (State) and Country of Birth"). Respondents also repeatedly refer to Petitioner with the pronouns "she" and "her," see Resp. at i, 6, 11, so the Court assumes that Respondents (understandably) prepared their brief in haste, and that their statement that Petitioner is from Guatemala represents a mistake rather than an actual dispute about Petitioner's country of origin.

## II. LEGAL STANDARD

A party seeking a preliminary injunction must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied." Friends of the Wild Swan v. Weber, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." Nken v. Holder, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22.

## III. DISCUSSION

Petitioner has satisfied the requirements for injunctive relief.[2]

### A. Likely Success on the Merits

Petitioner is likely to succeed in demonstrating that his re-detention without a pre-deprivation hearing violates his right to procedural due process.[3] "The Due Process Clause

---

[2] The Court therefore necessarily holds that it has jurisdiction to decide this issue. See Araujo-Contreras v. Janecka, No. EDCV 25-03442-KK-ACCVx, 2026 WL 1625368, at *2 (C.D. Cal. July 15, 2026) (holding that "Section 1226(e) does 'not strip federal courts of traditional habeas jurisdiction'; rather, it 'restricts jurisdiction only with respect to the executive's exercise of discretion but that discretionary judgment does not include constitutional claims or questions of law.'") (quoting Martinez v. Clark, 124 F.4th 775, 781–82 (9th Cir. 2024)).

[3] Although the application for a TRO raised violations of (1) the Garro Pinchi injunction and (2) the Due Process Clause, see App. for TRO at 5–14, the reply brief focuses on the Due Process Clause, see Reply at 1, 2–9. That brief does reference "the reasoning first articulated in Garro Pinchi v. Noem, where the court held that a noncitizen previously released by DHS possesses a protected liberty interest in continued freedom and is generally entitled to notice and a hearing before that liberty may be revoked," see id. at 9 (citing Garro Pinchi v. Noem, 792 F. Supp. 3d 1025, 1037–38 (N.D. Cal. 2025)), but not the injunction that Judge Pitts issued in that case. Accordingly, this order addresses the

applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). This Court has already concluded that the three-part test of Mathews v. Eldridge, 424 U.S. 319, 335 (1976), applies in the immigration detention context. Y.M.C.P. v. Alberran, No. 26-cv-08341-CRB, 2026 WL 2497562, at *3 (N.D. Cal. Aug. 25, 2026); see also Claros v. Albarran, 811 F. Supp. 3d 1062, 1066 (N.D. Cal. 2025) (collecting cases). Mathews requires consideration of (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. 424 U.S. at 335.

**1. Private Interest**

"A protected liberty interest may arise from a conditional release from physical restraint." Cordero Pelico v. Kaiser, No. 25-CV-07286-EMC, 2025 WL 2822876, at *6 (N.D. Cal. Oct. 3, 2025) (quoting Rodriguez v. Kaiser, No. 1:25-cv-01111-KES-SAB (HC), 2025 WL 2545359, at *4 (E.D. Cal. Sept. 4, 2025)). That is so even when the initial decision to release an individual results from the exercise of discretion. Id. (citing Calderon v. Kaiser, No. 25-cv-6695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025)). Non-citizens detained at ICE check-ins after their initial release are subject to 8 U.S.C. § 1226(a), which allows for the exercise of discretion. See Rodriguez Vasquez v. Bostock, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026); 8 U.S.C. § 1226(a) ("the Attorney General (1) may continue to detain the arrested alien; and (2) may release the alien on . . . conditional parole."). "[A] noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." Cordero Pelico, 2025 WL 2822876, at *6 (citing Ramirez v Clavijo v. Kaiser, 25-cv-06248-BLF, 2025 WL 2419263, at *6 (N.D. Cal. Aug. 21, 2026)); see also Garro Pinchi, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from

---

Due Process Clause only. Because the Court concludes that Petitioner is likely to prevail on his claim as to procedural due process, it does not reach his claim as to substantive due process.

custody she has a protected liberty interest in remaining out of custody.”).

Petitioner gained a liberty interest when Respondents released him from custody on his own recognizance in 2022. Pet. ¶ 1. While out of custody, Petitioner formed the “attachments of normal life.” See Morrissey v. Brewer, 408 U.S. 471, 482 (1972); Pet. ¶ 1 (“Since his release in 2022, Petitioner settled in Oakland, California, where he lives with a friend. Petitioner has been working in construction around the Bay Area . . . since receiving his employment authorization document in 2024.”), ¶ 15 (“He regularly sends money to Peru to help provide for his family and pay for his eldest child’s University fees. Petitioner . . . regularly picks up garbage around his neighborhood to keep the area around his home clean. Petitioner also volunteers at a friend’s ranch in Castro Valley to nurture his interest in animals.”), ¶ 36 (“Petitioner has also developed significant ties to the U.S. in the nearly four years he has been residing here. . . . Petitioner is also [a] contributing member of his community. He has established friendships.”).

Respondents’ arguments to the contrary, see, e.g., Resp. at 1, 8–10, are unpersuasive. See Doe v. Albarran, No. 25-cv-8774-VC, 2025 WL 3141224, at *2 (N.D. Cal. Nov. 10, 2025) (explaining why “neither Thuraissigiam nor Rodriguez Diaz reduce the likelihood that the petitioner here possesses a constitutionally protected liberty interest in remining free from detention during his pending immigration proceedings.”). Particularly notable is Respondents’ insistence that “[a]s an alien physically present in the United States without having been admitted, Petitioner is treated for constitutional purposes as if stopped at the border.” Resp. at 9 (citing Dep’t of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139–40 (2020)). That is not what Thuraissigiam says. Indeed, Thuraissigiam specifically refers to “an alien at the threshold of initial entry.” See 591 U.S. at 107. “As other district courts have noted, ‘Thuraissigiam’s discussion of due process is necessarily constrained to challenges to admissibility to the United States,’” and does not apply to challenges to re-detention. Ffriend v. Albarran, No. 26-cv-03942-WHO, 2026 WL 1915726, at *4 n.3 (N.D. Cal. May 14, 2026) (emphasis added) (internal citations omitted).

Petitioner therefore has a significant liberty interest in his continued freedom.

**2. Risk of Erroneous Deprivation**

"Once a liberty interest is established, the question is whether process—a hearing—would lessen the risk of an erroneous detention." Claros, 811 F. Supp. 3d at 1069. Of course it would. "'[T]he risk of an erroneous deprivation [of liberty] is high' where, as here, [the petitioner] has not received any bond or custody redetermination hearing." See Singh v. Andrews, No. 1:25-cv-00801, 803 F. Supp. 3d 1035, 1046 (E.D. Cal. July 11, 2025). That is because without a pre-deprivation hearing—"one of the most basic due process protections"—"neither party will have had an opportunity to determine whether there is any valid basis for the petitioner's detention." Duong v. Kaiser, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025).

Civil immigration detention is "nonpunitive," Zadvydas, 553 U.S. at 690, and thus detention prior to a removal proceeding is only justified where immigrants "pose [1] flight risks or [2] dangers to the community," Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1165 (9th Cir. 2026). Although Respondents here "assert that Petitioner is a danger to the community," their support for that assertion is his single arrest for a DUI and his single conviction for a wet reckless. See Resp. at 6; see also id. at 7 ("even Petitioner's arrest alone would have satisfied the standard because it materially changes the assessment of the danger that he poses to the community.") (citing Bello Reyes v. McAleenan, No. 19-cv-03630-SK, 2019 WL 5214051, at *4 (N.D. Cal. July 16, 2019) and United States v. Cisneros, No. 19-cr-280, 2021 WL 5908407, at *4 (N.D. Cal. Dec. 14, 2021)).

Petitioner's DUI arrest fails to justify his re-detention without a pre-deprivation hearing. See Hernandez Serrano v. Albarran, No. 26-cv-03452-EKL, 2026 WL 1611876, at *3 (N.D. Cal. June 4, 2026) (collecting cases in which courts held that arrests alone were insufficient); see also Y.M.C.P., 2026 WL 2497562, at *3 (this Court so holding). The cases that Respondents rely on do not warrant a contrary conclusion. See Resp. at 7. Bello Reyes, 2019 WL 5214051, at *4, which was subsequently reversed, see Bello-Reyes v. Gaynor, 985 F.3d 696 (9th Cir. 2021), pertained to an individual's retaliatory free speech

United States District Court
Northern District of California

claim. It was not about what process a petitioner is due when the government seeks to revoke his release. Cisneros, 2021 WL 5908407, at *1, was a criminal case in which a defendant sought to suppress evidence seized in connection with his arrest. In that case, Judge Seeborg held that "[t]he law does not require a hearing before arrest in this circumstance," but the circumstance was an arrest "for a gang-related assault." 2021 WL 5908407, at *4. "[C]ourts have found 'the Government's selective reliance on Cisneros dubious.'" See Mucu Maaz v. Albarran, No. 5:26-cv-08452-BLF, 2026 WL 2447545, at *3 (N.D. Cal. Aug. 20, 2026)

Petitioner's conviction for a wet reckless also fails to justify his re-detention without a pre-deprivation hearing. In Llanes Tellez v. Bondi, 826 F. Supp. 3d 1141, 1147 (N.D. Cal. 2025), the petitioner was re-detained at a scheduled ICE check-in due to a DUI conviction two years earlier. Judge Pitts held that the government had provided "little evidence that [the petitioner] poses any risk to the community," notwithstanding the DUI conviction, adding that the petitioner had "undergone treatment and maintained a clean record of compliance." He concluded:

> Under these circumstances, a pre-deprivation hearing before a neutral decisionmaker would have significant value in determining whether he poses a threat to the public. Such a hearing would enable the decisionmaker to understand precisely what [the petitioner] did, whether it was aberrant or unreflective of his typical behavior, and how he has conducted himself since that time, including whether he completes substance abuse counseling and what that counseling entailed.

Id. at 1153–54. Similarly here, an IJ might determine, following such a hearing, that Petitioner's conviction for a wet reckless (a lesser conviction than a DUI) makes him a danger to the community. But—given Petitioner's lack of any other contacts with law enforcement, his compliance with ICE check-ins and court hearings, his ongoing efforts to seek asylum, his work authorization, his steady employment, and his compliance with all of the requirements imposed in connection with his conviction, see Reply at 5—an IJ might determine otherwise. See Claros, 811 F. Supp. 3d at 1069. That is what hearings are for. See Duong, 800 F. Supp. 3d at 1040 ("The government's unilateral determination

that re-detention is warranted is far less likely to be correct than the decision reached by a neutral adjudicator in a bond hearing."). "Providing [Petitioner] with a pre-detention hearing will help ensure any future detention is lawful." See A.F.A.M., 2025 WL 3752190, at *4.

Respondents repeatedly assert that Petitioner's 2025 arrest and conviction do not only constitute changed circumstances as to his dangerousness, but also violations of his 2022 release conditions, which warned him not to violate any local, State, or Federal laws or ordinances. Resp. at 1, 6, 8.[4] Respondents argue that Petitioner's violation of a condition of his OREC justified his "re-detention without additional notice or process." Id. at 8. But Respondents miss two points. First, whether or not a petitioner violates a condition of his release, "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." See Hernandez, 872 F.3d at 981; see also Ramirez Clavijo, 2025 WL 2419263, at *3 ("The Government's election to . . . release[e] Petitioner under § 1226(a) provided Petitioner a liberty interest that is protected by the Due Process Clause."). In other words, a petitioner's violation of a condition of release does not somehow get the government out from under the Due Process Clause. Second, in practice, courts have not treated all violations of release conditions as justification for re-detention without a pre-detention hearing. See, e.g., Abreu Ferrer v. Casey, No. 26-cv-4103-GPC-MSB, 2026 WL 2273114, at *4 (S.D. Cal. Aug. 6, 2026) ("Respondents point only to Petitioner's violation of his conditions of release. However . . . it is not solely the violation itself that is compelling, but what a violation says about whether the individual

[4] Notably, despite their reliance on it, Respondents failed to file with the Court a copy of Petitioner's Order of Release on Recognizance (OREC). This is no small matter, especially given Respondents' further claim that "Under the terms of his OREC release, Petitioner was subject to re-detention without additional notice or processes"—a claim they make without support. See Resp. at 8 (emphasis added). In the absence of an OREC in the record, the Court searched for one online. The sample OREC online states that "[f]ailure to comply with the conditions of this order may result in revocation of your release and your arrest and detention by Immigration and Customs Enforcement," but it does not say "without additional notice or processes." See DHS Order of Release on Recognizance, https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf (last visited September 4, 2026).

poses a risk of flight or danger. . . . Thus, it does not necessarily follow from the allegation of a violation that Petitioner can be detained for those violations without a hearing.") (internal quotation marks and citations omitted); De Avila Hernandez v. Warden, 5:26-cv-02747-MAR, 2026 WL 1916444, at *4 (C.D. Cal. June 26, 2026) ("even the fact Petitioner violated a condition of release, without more, does not justify completely stripping him of his due process rights") (cleaned up); Geele v. Mullin, No. C26-1647-MLP, 2026 WL 1673812, at *5 (W.D. Wash. June 9, 2026) ("Courts have rejected the application of a bright line rule that any violation of conditions of release, regardless of individualized circumstances, justifies a noncitizen's immediate redetention without notice or an opportunity to respond."); A.F.A.M. v. Albarran, No. 25-cv-10492-AMO, 2025 WL 3752190, at *4 (N.D. Cal. Dec. 22, 2025) ("Courts have repeatedly rejected the argument that ICE can re-detain a noncitizen for technical violations 'without regard to whether [those] technical violation means that one is a flight risk or danger.'"); Espinoza v. Kaiser, No. 1:25-CV-01101 JLT SKO, 2025 WL 2675785, at *12 (E.D. Cal. Sept. 18, 2025) ("Assuming for purposes of this analysis that the asserted violations . . . are true, it does not necessarily follow that ICE could detain her without any notice or opportunity to challenge the basis for her re-detention"). Petitioner's alleged violations therefore might demonstrate a change in circumstances as to his dangerousness, but do not automatically do so.

Finally, the Court rejects Respondents' contention that Petitioner need not get a pre-deprivation hearing, because a post-deprivation hearing will do. See Resp. at 10–11 (relying on Rodriguez Diaz, 53 F.4th at 1196–97). Respondents' argument runs counter to the many cases where courts have found that pre-deprivation hearings were necessary before an individual could be re-detained. See, e.g., Hernandez Serrano, 2026 WL 1611876, at *3 (pre-deprivation hearing required unless situation urgently requires arrest); M.R.R. v. Chestnut, No. 1:25-cv-01517-JLT-SKO, 2025 WL 3265446, at *11 (E.D. Cal. Nov. 24, 2025) (holding that while "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate," pre-deprivation hearings are

more likely required where the alleged violation is minor); Guillermo M.R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) ("absent evidence of urgent conditions, a pre-deprivation hearing is required to satisfy due process"); Romero v. Kaiser, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("due process requires a hearing before an IJ prior to re-detention"). The liberty interest here is no less, and Respondents have made no showing of urgency. The baseline standard in favor of hearings prior to rights deprivations therefore remains. See Zinermon v. Burch, 494 U.S. 113, 127 (1990) ("the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."); see also Garro Pinchi, 792 F. Supp. 3d at 1033 (recognizing "right to a hearing before a neutral decisionmaker prior to any future detention").

Petitioner's risk of an erroneous deprivation without a pre-deprivation hearing is therefore high.

**3. Government Interest**

Courts must consider the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

As in Garro Pinchi, 792 F. Supp. 3d at 1036, there is "no countervailing government interest . . . that supports conducting a bond hearing only after [Petitioner] has been detained, rather than in advance thereof." Respondents present no explanation for why their "interests [in detaining Petitioner] must be satisfied immediately," far be it one that outweighs the risk of an ongoing and erroneous deprivation of constitutional rights. See E.A. T.-B v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). A generalized interest in "preventing noncitizens from remaining in the United States in violation of the law" is "not threatened if a pre-deprivation hearing is required." Id. Although the government asserts an interest in re-arresting Petitioner, see generally Resp., "its interest in doing so without a hearing is low," Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). The government's interest is further diminished where a petitioner has consistently appeared. Garro Pinchi, No. 25-5632-RMI (RFL), 2025 WL 1853763, at *2 (N.D. Cal.

July 4, 2025). Moreover, the fiscal and administrative burdens of a pre-deprivation hearing are insignificant. See Garro Pinchi, 792 F. Supp. 3d at 1036 ("Nor can the government suggest that the cost of providing such protections would be fiscally or administratively onerous."); Singh, 2025 WL 1918679, at *8 ("In immigration court, custody hearings are routine and impose a minimal cost.").

The government's interest in detaining Petitioner without a pre-deprivation hearing is therefore low.

#### 4. Conclusion as to Mathews Factors

The Mathews factors weigh in favor of Petitioner, and he has shown a likelihood of success on his procedural due process claim.

### B. Other Winter Factors

Petitioner has also demonstrated a likelihood of immediate, irreparable injury in the absence of temporary relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez, 872 F.3d at 994 (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)). The Ninth Circuit has specifically recognized "the irreparable harm imposed on anyone subject to immigration detention." Id. at 995.

The balance of the equities and public interest, which merge in this case, also favor the granting of a preliminary injunction. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." Jorge M. F. v. Wilkinson, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); see Melendres, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts have concluded under similar circumstances, "the potential harm to [Petitioner] is significant, while the potential harm to

United States District Court
Northern District of California

the government is minimal." Pablo Sequen v. Kaiser, No. 25-cv-06487-PCP, 2025 WL 2203419, at *3 (N.D. Cal. Aug. 1, 2025). At most, the government faces a "short delay in detaining [Petitioner] if it ultimately demonstrates . . . that his detention is necessary to prevent danger to the community." See id. The government is also not "harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983).

Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." Hernandez, 872 F.3d at 996 (quoting Lopez v. Heckler, 713 F.2d 1432, 1437 (9th Cir. 1983)).[5]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion for preliminary injunction.

Respondents, and their officers, agents, employees, attorneys, and any person acting in concert with them, or at their behest, and who has knowledge of this injunction, are ENJOINED from detaining Petitioner without a pre-detention hearing before a neutral decisionmaker.

There is no realistic likelihood of harm to Respondents from enjoining their conduct, and so Petitioner need not give security under Rule 65(c) of the Federal Rules of Civil Procedure. See Jorgensen v. Cassiday, 320 F.3d 906, 919–20 (9th Cir. 2003); Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999).

**IT IS SO ORDERED.**

Dated: September 8, 2026

CHARLES R. BREYER
United States District Judge

[5] The Court rejects Respondents' remaining argument regarding exhaustion, Resp. at 11–12, mainly because constitutional Due Process challenges are precisely "the sort of constitutional challenge that is 'beyond the competence of that [agency] to decide.'" See Norberto C.M., No. 1:26-cv-04674-MWJS, 2026 WL 1992747, at *4 (E.D. Cal. July 9, 2026) (quoting Zamorano v. Garland, 2 F.4th 1213, 1224 (9th Cir. 2021)).